UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 02-68(DSD/JMM)

Mid-List Press,

Plaintiff,

v. **ORDER**

James J. Nora, Sr.,

Defendant.

Laura J. Hein, Esq., Kacy C. Kleinhans, Esq. and Gray, Plant, Mooty, Mooty & Bennett, 3400 City Center, 33 South Sixth Street, Minneapolis, MN 55402, counsel for plaintiff.

John F. Bonner III, Esq. and Bonner & Borhart, 1500 AT&T Tower, 901 Marquette Avenue South, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court on plaintiff's motion and on defendant's motion for a preliminary injunction. Based upon a review of the file, record and proceedings herein, the court denies both parties' motions for a preliminary injunction.

**BACKGROUND**

This action involves competing claims for trademark infringement and false designation of origin, conversion, deceptive trade practices and consumer fraud relating to the use of the

FILED 5-14-02
RICHARD D. SLETTEN, CLERK
Judgment Ent'd. ______
Deputy Clerk's Initials ______

trademark "Mid-List Press" and the International Standard Book Number ("ISBN") publisher prefix number 0-92281.

Plaintiff is a Minnesota non-profit corporation with its principal place of business in Minneapolis, Minnesota. For many years it has published books by new and emerging writers and by those writers whose access to commercial or mainstream publishers is limited.

Defendant, James J. Nora, Sr. ("Nora"), is a retired medical school professor and is a resident and citizen of the State of Colorado, residing in Aurora, Colorado. Nora first founded Mid-List Press as a sole proprietorship in July 1988. During his operation of Mid-List Press as a sole proprietorship, he obtained the ISBN publisher prefix number 0-92281. In January, 1990, he formed Jackson, Hart and Leslie, Inc., a Colorado corporation. Nora was the sole shareholder, as well as director and officer, of that corporation. Nora asserts that he permitted Jackson, Hart and Leslie to use his ISBN number and trademark, "Mid-List Press," in connection with its book publishing business.

In 1993, Jackson, Hart, and Leslie, Inc., a Colorado corporation, was dissolved. Nora asserts that all of the assets of that corporation, including the trademark and ISBN, were distributed to him as sole shareholder. In December 1993, Jackson, Hart and Leslie, Inc., ("JHL") a Minnesota non-profit corporation was incorporated as successor to Jackson, Hart and Leslie, Inc., a

Colorado corporation. Nora was a board of directors member of JHL from 1993 until his ouster in November, 2001.[1] He asserts that he permitted JHL to use his trademark and ISBN number in connection with JHL's book publishing business but never specifically conveyed his ownership or control of the trademark or ISBN to JHL.

Plaintiff counters that all assets and liabilities were transferred in 1993 to JHL and Nora cannot contend that he retained any proprietary or personal interest in any of the assets of that company including the trademark and ISBN. Plaintiff contends that it has used the mark "Mid-List Press" continuously and exclusively since 1993. Moreover, plaintiff asserts that as a nonprofit corporation it has no shareholders or owners and that its business activities are limited to those that further its stated mission and Nora cannot now claim to have retained a proprietary interest in either the trademark or the ISBN.

The instant dispute emerged when plaintiff decided not to publish a book of Nora's poetry. Nora self-published the work using the trademark, "Mid-List Press," and the ISBN prefix number 0-922811. Plaintiff now seeks a preliminary injunction asserting that Nora had no authority or permission to use either the trademark or ISBN number and should be enjoined from further use of either the trademark or ISBN. Plaintiff also alleges that Nora's

---

[1] Nora disputes the validity of his ouster alleging that there was an improper notice and vote.

use of the trademark and ISBN constitutes a false designation of origin and is likely to cause confusion. Defendant has cross-moved for a preliminary injunction asserting that since he owns both the trademark, "Mid-List Press," and the ISBN number, and that since he never directly conveyed an interest in either of them to plaintiff, he is entitled to an injunction to enjoin plaintiff from using the trademark or ISBN without his authority.

For the following reasons, the court concludes that since this matter centers on who owns and who has control of the use of the subject ISBN and trademark, "Mid-List Press," disputed issues of fact exist that preclude the issuance of an injunction for either party at this preliminary stage. Accordingly, the court will deny both motions.

**DISCUSSION**

In evaluating a motion for preliminary injunction, the court considers the four factors set forth by the Eighth Circuit in Dataphase Sys., Inc. v. CL Sys., Inc.: (1) the threat of irreparable harm to the movant in the absence of relief; (2) the balance between that harm and the harm that the relief would cause to the other litigants; (3) the likelihood of the movant's success on the merits; and (4) the public interest. 640 F.2d 109, 112-114 (8th Cir. 1981). See also Aveda Corp. v. Evita Mktg., Inc., 706 F. Supp. 1419, 1426 (D. Minn. 1989) ("[t]he test for granting a

preliminary injunction in trademark infringement litigation is the same test applied in other areas of law."). The movant bears the burden of proof concerning each of these factors. See Gelco Corp. v. Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987). While the court balances the four factors to determine whether injunctive relief is warranted, the third factor, probable success on the merits, is frequently considered to be the most important in an action such as this and will be considered first by the court. See Am. Dairy Queen v. New Line Prods., 35 F. Supp. 2d 727, 729 (D. Minn. 1998); S & M Constructors, Inc. v. Foley Co., 959 F.2d 97, 98 (8th Cir. 1992).

**1. Likelihood of Success**

Under the Dataphase analysis, a moving party must establish a substantial probability of success on the merits. Dataphase, 640 F.2d at 112. To succeed on a trademark infringement claim, a party must demonstrate that: (1) it has a trademark that merits protection; and (2) there is a likelihood of confusion between the mark and the alleged infringing mark. See Yarmouth-Dion, Inc. v. D'ion Furs, Inc., 835 F.2d 990, 992-993 (8th Cir. 1987).

Here, after carefully reviewing the record, the court determines that a factual dispute exists as to who owns and has the right to control the use of the trademark, "Mid-List Press," and the ISBN. At this preliminary injunction stage, the court cannot find that either party is likely to prevail on the merits.

Defendant asserts that he obtained the ISBN and created the trademark, "Mid-List Press," upon founding a sole proprietorship publishing business called Mid-List Press in 1988, and that he has retained an ownership interest in both the trademark and the ISBN since that time. He further asserts that while he permitted plaintiff to use his trademark while he was affiliated with plaintiff serving as a board officer, he never directly conveyed any ownership interest in that trademark to any other person or entity and that the ISBN is still presently registered in his name alone. He contends that he is therefore entitled to continue to use the trademark and ISBN number.

Plaintiff produces little evidence to counter defendant's assertions, but rather argues that it owns the trademark and ISBN since it has used both without contention for nearly nine years. Plaintiff also asserts that the trademark and ISBN did not revert to Nora in 1993, but instead was transferred to plaintiff, the successor non-profit corporation, at that time. Plaintiff also asserts that an injunction is required to protect the public from confusion and deception. At this preliminary stage, however, plaintiff fails to convince the court that there is a real likelihood of public confusion or deception or that it has validly acquired the trademark at issue.[2] Instead, the court believes that

---

[2] While the court notes that plaintiff has set forth some evidence involving two misdirected invoices from Amazon.com, the (continued...)

there is an issue of fact as to who is entitled to use the trademark and ISBN in question.

Accordingly, the court cannot find that either party is likely to prevail on the merits at this preliminary stage, and the court concludes that a preliminary injunction is inappropriate.

**2. Threat of Harm**

The court also believes that neither party has shown a threat of irreparable injury sufficient to warrant the issuance of a preliminary injunction. The cornerstone of plaintiff's argument is that defendant's use of the trademark is likely to lead to public confusion and deception. Plaintiff, however, fails to provide persuasive evidence to support this assertion. Defendant counters that irreparable harm exists in that plaintiff is using, without his authority, a trademark that he claims he still owns. Similarly, the court notes that defendant fails to produce sufficient evidence to demonstrate irreparable harm.

While the court recognizes that there is often a presumption of harm in trademark infringement cases, that presumption lies on a showing of likelihood of confusion. See General Mills, Inc. v. Kellogg Co., 824 F.2d 622, 625 (8th Cir. 1987). As the court has

---

[2](...continued) court does not consider these significantly representative of public confusion to warrant the issuance of an injunction, especially in light of the underlying material fact issues that the court sees throughout this matter involving the validity of the trademark.

already discussed, neither party has effectively persuaded the court as to who is entitled to use the trademark and that there is a real likelihood of confusion in the present matter. The court cannot base a preliminary injunction on harm that is non-existent or speculative. See In Re Travel Agency Commission Antitrust Litigation, 898 F. Supp. 685, 689 (D. Minn. 1995)("an injunction cannot issue based on imagined consequences of an alleged wrong. Instead, there must be a showing of imminent irreparable injury."). Put differently, the court cannot find harm without resolving the disputed fact issue of who is entitled to use the trademark and ISBN.

Because the court believes that both parties' arguments concerning irreparable injury are unpersuasive absent a determination of who is entitled to use the trademark, the court must also deny the injunction on this basis. See Gelco, 811 F.2d at 420 ("once a court determines that the movant has failed to show irreparable harm absent an injunction, the inquiry is finished and the denial of the injunctive request is warranted").

**3. The Remaining Dataphase Factors**

Because the court has reached the conclusion that an injunction is inappropriate in this matter based on its consideration of the first two Dataphase factors, the court determines that it need not evaluate the remaining two Dataphase factors.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that the plaintiff's motion [Docket No. 19] and defendant's motion [Docket No. 17] for a preliminary injunction are both denied.

Dated: May 14, 2002

David S. Doty, Judge
United States District Court