**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**Mid-List Press,**

**Plaintiff,**

**v.**

**James L. Nora, Sr.,**

**Defendant.**

**Civil No. 02-68 (DSD/SRN)**

**ORDER**

---

Laura J. Hein, Esq., on behalf of Plaintiff.

Thomas DeVincke, Esq. and Robyn K. Johnson, Esq., on behalf of Defendant.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter came before the undersigned United States Magistrate Judge on September 10, 2002, on Plaintiff's Motion to Compel Discovery (Doc. No. 25). This Order addresses that motion.

## I. BACKGROUND.

In the present case, Plaintiff has brought claims for trademark infringement, false designation of origin, violations of the Minnesota Deceptive Trade Practices Act, and breach of fiduciary duty. These claims are based on Plaintiff's allegations that Defendant misappropriated Plaintiff's International Standard Book Number[1] (ISBN) and trademark MID-LIST PRESS for his own self publication.

---

[1]An International Standard Book Number is a unique ten-digit number which identifies a specific title or edition of a title. The first digit designates the language in which the book is written. The subsequent two to eight digits of the number are unique to each publisher.

NOV 0 1 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Specifically, Plaintiff alleges the following events took place:

Defendant, who was at that time a Mid-List officer, suggested to Plaintiff that he self-publish a book of poetry titled *Songs from a Brazen Bull*, using Plaintiff's identifying ISBN and trademark. When Plaintiff declined, Defendant surreptitiously published his book using Plaintiff's ISBN and trademark. Defendant then falsely represented to RR. Bowker, the central ISBN database for the United States ISBN Agency, that *Songs from a Brazen Bull* was published by "Skald Books," a fictitious imprint of Plaintiff. This false representation caused Bowker to delete Plaintiff's actual contact information from its records, and, consequently, to list all of Plaintiff's actual titles and their ISBNs as no longer in print and no longer available.

Defendant performed these acts in order to submit *Songs from a Brazen Bull* to the Library of Congress and obtain a Library of Congress Catalogue Number (LCCN). Defendant then placed *Songs from a Brazen Bull* in Amazon.com's Advantage program, using Plaintiff's ISBN and identifying Skald Books as the publisher. Consequently, all of Plaintiff's titles on Amazon.com and its online retail partner, Borders.com, became listed as publications of Skald Books. As a result, any person browsing these websites was led to believe that Plaintiff had either ceased operations or had transferred its publication rights to Skald Books.

## II. DISCUSSION.

### A. <u>Relevance Standard.</u>

Federal Rule of Civil Procedure 26(b)(1) provides:

> In General. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . . The information sought need not be admissible at the trial

> if the information appears reasonably calculated to lead to the discovery of admissible evidence.

The Eighth Circuit has considered the breadth of Rule 26 and the possible abuses discovery requests which can result from it.

> Rule 26(b) of the Federal Rules of Civil Procedure is widely recognized as a discovery rule which is liberal in scope and interpretation, extending to those matters which are relevant and reasonably calculated to lead to the discovery of admissible evidence. *Kramer v. Boeing Co.*, 126 F.R.D. 690, 692 (D. Minn. 1989) (and cases cited therein). While the standard of relevance in the context of discovery is broader than in the context of admissibility (Rule 26(b) clearly states that inadmissibility is no grounds for objection to discovery), *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978), *Culligan v. Yamaha Motor Corp., USA*, 110 F.R.D. 122 (S.D. N.Y. 1986), this often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery. Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case.

Hofer v. Mack Trucks, Inc., 981 F.2d 377 (8th Cir. 1992).

**B. Production of Documents.**

> **(a) Scope.** Any party may serve on any other party a request (1) to produce and permit the party making the request, or someone acting on the requestor's behalf, to inspect and copy, any designated documents (including writings, drawings, graphs, charts, photographs, phonorecords, and other data compilations from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form), or to inspect and copy, test, or sample any tangible things which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served; or (2) to permit entry upon designated land or other property in the possession or control of the party upon whom the request is served for the purpose of inspection and measuring, surveying, photographing, testing, or

> sampling the property or any designated object or operation thereon, within the scope of Rule 26(b).

Fed. R. Civ. P. 34.

"[U]nder Rule 34, 'control' does not require that the party have legal ownership or actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability, to obtain the documents from a non-party to the action." Prokosch v. Catalina Lightning, Inc., 193 F.R.D. 633, 636 (D. Minn. 2000) (citations omitted).

**C. Plaintiff's Motion to Compel.**

**1. Document Request Nos. 1, 2, 4, 5, & 10:**

> **Document Request No. 1.:** All documents, including without limitation electronic and conventional correspondence, handwritten notes, and telephone records, reflecting all communications between you and the Library of Congress on the subjects of *Songs from a Brazen Bull*, the publication thereof, or the issuance of a Library of Congress Catalog Number (LCCN) to that work.

Plaintiff states that the requested documents are relevant to show that Defendant violated his fiduciary duties and also violated Plaintiff's trademark, by representing himself as Plaintiff in communications with the Library of Congress.

Plaintiff states that Defendant has not fully complied with this request. It explains that Defendant "has conspicuously neglected to produce portions of the correspondence to which reference is specifically made in the five emails he did produce." In addition, "in another produced email, the Library of Congress again references a communication/request from defendant Nora that he has failed to produce." Plaintiff also explains that the "To" line of this

email is blank, suggesting that Defendant has redacted this information.

Defendant replies that he has produced all communications between himself and Amazon.com in his possession, and has not redacted any information contained on any document.

> **Document Request No. 2:** All documents including without limitation electronic and conventional correspondence, handwritten notes, and telephone records reflecting all communications between you and Amazon.com on the subject of *Songs from a Brazen Bull*, the publication thereof, or any reference to "Mid-List Press."

Plaintiff states that Defendant has produced emails he received from Amazon.com, but some of these emails refer to an application from Defendant for the Advantage program. In addition, Plaintiff states another email from Amazon.com requests confirmation of Defendant's authority to distribute *Songs from a Brazen Bull*. Plaintiff states that Defendant has not produced his own communications to Amazon.com which prompted these responsive emails.

Defendant states that he has produced all responsive documents in his possession.

> **Document Request No. 4:** All documents including without limitation electronic and conventional correspondence, handwritten notes, and telephone records reflecting all communications between you and RR. Bowker or any other person or entity on the subject of International Standard Book Numbers ("ISBNs") and/or log books.

Plaintiff states this discovery is relevant because it concerns Defendant communicating with Plaintiff under the guise of being a contact person for Plaintiff. Plaintiff states that Defendant has produced incomplete copies of numerous communications with R.R. Bowker. On at least one email, the first page Defendant provided is labeled "4 of 10," and the last page is labeled "8 of 10.)

Defendant responds that he has produced all the documents in his possession reflecting communications between himself and R.R. Bowker.

> **Document Request No. 5:** All documents including without limitation cancelled checks, money orders, or credit card receipts or statements reflecting payments made by you or on your behalf to RR. Bowker or any other person or entity in order to obtain information regarding ABI forms, ISBN numbers, or other materials or information relating to Mid-List Press, Jackson, Hart & Leslie, Inc., or Skald Books, including the ABI form prepared for *Songs from a Brazen Bull.*

Plaintiff states that Defendant's own emails to Plaintiff acknowledge that he obtained an ABI form for *Songs from a Brazen Bull.* Consequently, he should produce the ABI form that he previously admitted exists, as well as any other documents covered by this request.

Defendant responds that he did not keep a copy of the ABI form prepared for *Songs from a Brazen Bull.* Hence, his initial response to this request, that no such documents exist, is correct.

> **Document Request No. 10:** All documents including without limitation electronic and conventional correspondence, handwritten notes, and telephone records reflecting or relating to the promotion of *Songs from a Brazen Bull*, including a log of disseminated review copies and complimentary copies, press releases, title information, and bound or unbound galleys.

Plaintiff states this discovery is relevant because any such promotional activity under Plaintiff's name and trademark would be contrary to Plaintiff's proprietary rights. Plaintiff explains that Defendant produced a document which indicates he did submit materials to *Library Journal* for promotional purposes. In addition, Plaintiff believes Defendant distributed at least one other complimentary copy of *Songs from a Brazen Bull* to reviewers or members of the public.

Defendant responds that there are no responsive documents in his possession. He states that the email stating that *Library Journal* had a pending review of *Songs from a Brazen Bull* was in error. Defendant states that the only copy he sent out for review was sent to BookList, and he did not retain copies of any transmittal documents.

The Court grants Plaintiff's motion with respect to Document Request Nos. 1, 2, 4, 5, and 10. Defendant is instructed to supplement his responses with any additional documents which fall under the definition of control put forth in Fed. R. Civ. P. 34 and explained in Prokosch. If Defendant still believes there are no additional responsive documents after his counsel explains this definition of control to him, Defendant is instructed to submit a signed discovery response stating so.

In addition, Defendant seems to have discarded relevant documents reflecting correspondence with third parties while the present controversy was pending. Consequently, he is instructed to contact those third parties and request copies of such correspondence and provide it to Plaintiff.

> **2. Document Request No. 6:**
> All documents including without limitation electronic and conventional correspondence, handwritten notes, and telephone records, reflecting, relating or responding to inquiries or other communications directed to you as the contact person for Mid-List Press.

Plaintiff states that Defendant's affidavit refers to communications he had with Amazon.com and R.R. Bowker regarding the purported Mid-List publication *Songs from a Brazen Bull*. According to Plaintiff, "any such documents would be relevant to the dispute between the parties, "since any action taken by defendant Nora as the alleged contact person for

Mid-List would be in breach of his fiduciary duties at best and fraudulent at worst."

Defendant states that his initial response that no documents reflecting him as the contact person for Plaintiff is accurate. Defendant explains that he was president and publisher of Plaintiff at the time *Songs from a Brazen Bull* was being published, and communications made in his capacity in connection with such publication have been produced.

The Court grants Plaintiff's motion with respect to Document Request No. 6. Defendant's initial response that no such documents exist contradicts his current argument that he has already produced all responsive documents. Defendant is instructed to produce all responsive documents from May 4, 2001, the earliest date at which Defendant submitted his manuscript to Plaintiff for comment and review, to the present date.

> **3. Document Request No. 8:**
> All documents including without limitation electronic and conventional correspondence, handwritten notes, and telephone records reflecting or relating to production of *Songs from a Brazen Bull*, including without limitation solicitation of bids, purchase orders, fee-for-service invoices, and sales and use taxes paid or exemption for such taxes claimed for printing, binding, bar coding, shipping, and storage.

Plaintiff states that Defendant produced two receipts from Hampden Press that are not responsive to this request. The receipts are dated August 8 and August 30, 1999. Plaintiff states that Defendant did not decide to publish *Songs from a Brazen Bull* until some time after May 4, 2001. Plaintiff argues that Defendant should produce all documents reflecting or relating to the production of *Songs from a Brazen Bull*.

Defendant responds that he has produced all responsive documents to this request. He explains that the dates on the Hampden Press charge machine must have been in error, as the

charges were incurred on August 8 and August 30, 2001. Defendant states the charges are accurately reflected on his MasterCard statement for the period of August 2001, and a copy of that statement will be produced.

The Court denies Plaintiff's motion as moot with respect to Document Request No. 8.

> **4. Document Request No. 11:**
> All documents including without limitation electronic and conventional correspondence, handwritten notes, and telephone records reflecting or relating to any solicitations to individuals inviting them to purchase *Songs from a Brazen Bull* from Amazon.com or any other retailer or wholesaler.

Plaintiff states that upon information and belief, Defendant solicited individuals to purchase *Songs from a Brazen Bull* from Amazon.com and other retailers on at least one occasion. This was through the 2001 Nora Family Christmas Letter. Consequently, Plaintiff states Defendant must produce the 2001 Nora Family Christmas Letter and any other communications in which individuals were invited to purchase *Songs from a Brazen Bull*.

Defendant responds that the 2001 Nora Family Christmas Letter was not a solicitation. Nevertheless, he states he has produced the letter.

The Court denies Plaintiff's motion as moot with respect to Document Request No. 11.

> **5. Document Request No. 13:**
> All documents reflecting your personal use or intended use of Subject Mark at any time after the dissolution of Jackson, Hart & Leslie, Inc., a Colorado corporation, in November 1993.

Plaintiff states that it is unclear what documents that have been produced are responsive to this request. In addition, Plaintiff states that it does not possess or have access to any documents that evidence Defendant's personal or intended use of Plaintiff's mark. Because any use by Defendant of the marks MID-LIST or MID-LIST PRESS are relevant to the present case,

Plaintiff concludes that Defendant should be required to clarify whether documents already produced satisfy this request. If the documents already produced do not satisfy this request, Plaintiff states Defendant should be required to produce whatever responsive documents do exist.

Defendant's initial response to this request was that any responsive documents were equally available to Plaintiff because they were in the possession of Plaintiff and in the possession of third parties who have purchased or are selling publications bearing the Subject Mark and ISBN. Defendant explains that his position is that the subject trademark and ISBN are his property. Hence, any document upon which the trademark and ISBN appear reflect Defendant's use of the trademark and ISBN. The responsive documents, therefore, include all such documents in Plaintiff's possession as well as publications and communication in the possession of innumerable third parties.

The Court grants Plaintiff's motion with respect to Document Request No. 13. Defendant is instructed to produce all responsive documents in his possession. If the volume of responsive documents in his possession is so great that production would be unduly burdensome, the parties may make arrangements for Plaintiff to inspect the documents on Defendant's premises and copy whichever ones it finds relevant. If, instead, Defendant believes he has already produced all responsive documents, he must clarify that in the form of a written discovery response.

**6. Tax documents.**

> **Document Request No. 18:** All federal, state and local tax returns and associated schedules prepared by you or on your behalf for tax year 1990, reflecting any transfers, donations, assignments, or valuations of Mid-List Press assets.
>
> **Document Request No. 19:** All federal, state and local tax returns and associated schedules prepared by you or on your behalf for tax

> year 1993, reflecting shareholder distributions made to you and/or your spouse of any assets of Jackson, Hart & Leslie, Inc., a Colorado corporation.
>
> **Document Request No. 20:** All federal, state and local tax returns and associated schedules prepared by you or on your behalf for tax year 2001.

Plaintiff states that these requests are relevant because one of the issues in the present case is who owns certain assets of Mid-List Press. Plaintiff maintains that all of the assets of Mid-List Press were distributed to him as its sole shareholder in 1993. Defendant states that if this claim is true, Defendant's 1993 tax returns should reflect the shareholder distributions that Plaintiff claims were made to him. Similarly, Defendant claims he was the sole owner of Mid-List's predecessor in 1990. Consequently, Plaintiff states the 1990 tax returns are also relevant, because they should reflect expenses incurred in connection with Defendant's publishing activities. Finally, Plaintiff explains that Defendant's 2001 tax returns are relevant because they should reflect expenses incurred in connection with Defendant's publishing activities.

Plaintiff has clarified its request, stating that it only seeks Defendant's individual income tax returns, in particular those portions that reflect: (1) distributions to shareholders upon dissolution of the Colorado for-profit corporation; and (2) expenses incurred in connection with Defendant's publishing activities under the names Mid-List Press or Skald Books.

Defendant responds that he has produced the page of his 1990 tax return that reflects the financial condition of his sole proprietorship Mid-List Press. With respect to his 1993 tax return, Defendant states he did not reflect any distribution of assets of the dissolved corporation in his return. Thus, no responsive documents exist. With respect to his 2001 tax return, Defendant states that no deductions were taken for expenses associated with publication of *Songs from a*

*Brazen Bull*. Thus, no responsive documents exist.

The Court denies Plaintiff's motion as moot with respect to Document Request No. 18.

The Court grants Plaintiff's motion with respect to Document Request Nos. 19 and 20. Defendant's initial response to these requests was not that no responsive documents exist. Defendant's response to Document Request No. 19 was that any responsive documents were already in Plaintiff's possession. And his response to Document Request No. 20 was that the request was overbroad and sought irrelevant information. If Defendant now believes instead that no responsive documents exist, he is instructed to update his previous responses with a signed discovery response stating so.

**7. Nora's computer hard drive.**

Plaintiff seeks all contents (or copies) of Defendant's hard drive through which Defendant has communicated with the Library of Congress, R.R. Bowker, Amazon.com, or any other person regarding matters responsive to Plaintiff's document requests. Plaintiff explains this request is necessary because Defendant's previous discovery responses have not been forthcoming, and at times contradicted by prior statements. Plaintiff cites Playboy Enterprises, Inc. v. Welles, 60 F. Supp.2d 1050, 1053 (S.D. Cal. 1999) for the proposition that under the terms of Fed. R. Civ. P. 34, "Mid-List's requests for documents include a request for the production of responsive information stored in electronic form." Plaintiff quotes the court's statement in Rowe Entertainment, Inc. v. The William Morris Agency, Inc., 205 F.R.D. 421, 427, 431 (S.D. N.Y. 2002) that "electronic documents are no less subject to disclosure than paper records."

Defendant responds that while electronic data including emails that have been deleted can

be considered documents whose production may be compelled, that is not appropriate in the present case. Defendant states Plaintiff likely seeks these documents simply to harass him. Defendant explains that he has already admitted that he published *Songs from a Brazen Bull*, and any further discovery on this issue would be needlessly duplicative. Defendant explains that his hard drive contains substantial amounts of personal and otherwise unrelated information. In addition, it contains information subject to attorney-client privilege and work-product protection. Further, Defendant states that reproduction and segregation of the material on the hard drive will be time consuming and expensive.

Defendant explains that under Playboy, 60 F. Supp.2d at 1053, information on hard drives is discoverable only if the producing party is protected against undue burden and invasion of privileged matter. Defendant cites McCurdy Group LLC v. Am. Biomedical Group, Inc., 2001 WL 536974 (10th Cir.) for the proposition that production of a hard drive is a drastic remedy that should only be used with caution.

If the Court does grant Plaintiff's request, Defendant asks that Plaintiff bear the cost entirely. In addition, Plaintiff requests that in this event an independent party be appointed to determine what information, if any, should be revealed to Plaintiff.

The Court grants Plaintiff's motion in part with respect to Defendant's hard drive. Defendant is instructed to make two copies of his hard drive, one for each party. Those copies should be provided to an independent expert who will execute sufficient key word searches to locate all potentially responsive documents. The parties are instructed to divide the cost of providing this independent expert evenly between themselves. Defendant will then review these documents to determine whether any are privileged. Whatever documents are not privileged

must be produced. If any of the remaining documents present additional problems, they should be presented to the Court for in camera review.

**THEREFORE, IT IS HEREBY ORDERED that:**

Plaintiff's Motion to Compel Discovery (Doc. No. 25) is **GRANTED** as to Document Request Nos. 1, 2, 4, 5, 6, 10, 13, 19, and 20 and copying Defendant's hard drive, consistent with this Order, and **DENIED AS MOOT** as to Document Request Nos. 8, 11, and 18.

Dated: November 1, 2002

Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge