UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 02-68(DSD/SRN)

Mid-List Press,

Plaintiff,

v. **ORDER**

James J. Nora, Sr.,

Defendant.

Laura J. Hein, Esq. and Gray, Plant, Mooty, Mooty & Bennett, 3400 City Center, 33 South Sixth Street, Minneapolis, MN55402, counsel for plaintiff.

Fred R. Jacobberger, Esq. and Jacobberger, Micallef & Associates, 2720 Maplewood Drive, Maplewood, MN 55109, counsel for defendant.

This matter is before the court upon the cross-motions of the parties for partial summary judgment. For the following reasons, plaintiff's motion is granted and defendant's motion is granted in part and denied in part.

## BACKGROUND

### I. The Evolution of MLP

Plaintiff Mid-List Press ("MLP") is a non-profit publishing company incorporated in the State of Minnesota in 1993. Defendant James Nora, Sr. ("Nora") founded MLP's predecessor entity in Denver, Colorado in 1988. The initial enterprise operated out of

JUL 3 1 2003
FILED ______
Richard D. Sletten, CLERK
Judgment Ent'd. ______
Deputy Clerk's Initials ______

offices in Nora's home in Colorado and the home of his daughter, Marianne Nora ("M. Nora") in Minneapolis, Minnesota. In 1990 the proprietorship was incorporated in the State of Colorado under the name Jackson, Hart & Leslie, Inc. ("JHL"). The business continued to operate out of the Colorado and Minnesota offices. JHL's Articles of Incorporation listed five members of the Nora family as its directors.[1] Although JHL was authorized to issue five shares of stock, none were issued.

In 1993 the Colorado corporation was dissolved and Jackson, Hart & Leslie, Inc. was incorporated in Minnesota as a non-profit corporation under Chapter 317A of the Minnesota statutes. Although the dissolution filed in Colorado stated in part, "all remaining property and assets of the corporation have been distributed among its shareholders," the inventory, corporate records and other corporate assets were relocated to the Minnesota offices of the new corporation.[2] MLP's incorporators were Nora, M. Nora and Curtis Lane Stiles. A new board of directors was also formed at that time.[3] In 1994 and 1995, MLP declared to the United States

---

[1] The Colorado corporation's directors were Nora, Audrey Hart Nora, M. Nora, James Jackson Nora, Jr. and Elizabeth Hart Nora.

[2] The original enterprise registered the trade name Mid-List Press with the Colorado Department of Revenue. For clarity, the Minnesota corporation will be referred to as MLP.

[3] MLP's directors included Lane Stiles ("Stiles"), Michael Robins, Edward Wedman, Marcia Fluer, G. Scott Vaughn, Marianne Nora, James Nora, Sr., Tony Bouza and Erica Bouza.

Internal Revenue Service that all JHL assets had transferred to MLP and that no incorporator had retained any interest in the assets of the dissolved Colorado corporation.

**II. Defendant's Actions**

After MLP incorporated in Minnesota, Nora continued as a director and as its president. However, Nora's residence remained in Colorado and he was not active in the management of the corporation. M. Nora and Stiles, who were also officers of the corporation, managed the day-to-day operations. In 2001 Nora sent a manuscript of his own poetry to MLP for publication. M. Nora and Stiles informed Nora that MLP would only consider the work for publication under MLP's First Series Award for Poetry program.[4] They told Nora that because MLP was now a 501(c)(3) non-profit organization, its assets could not be used for the personal benefit of its officers and directors. Stiles told Nora that it would not be right for MLP to treat him differently than any other unpublished poet applicant or make special exceptions for officers of the corporation.

Rather than submit the manuscript to the MLP First Series Award for Poetry program, Nora circumvented MLP and applied directly to the Library of Congress for a Library of Congress Catalog Number ("LCCN") using MLP's International Standard Book

[4] The First Series program was review and selection program geared toward publication of the works of never-before published poets and authors.

Number ("ISBN") prefix and a made up suffix.[5] Nora did not know which three-digit ISBN suffixes had been used by MLP and which were available because the log book of three-digit suffixes was located at the Minneapolis office. Therefore, he guessed which suffix would be available. When he contacted the Library of Congress, Nora identified himself as Stiles. Nora did not inform MLP until sometime later that he was applying to the Library of Congress for an LCCN, that he was using MLP's assigned ISBN or that he had impersonated Stiles. Nora also contacted R.R. Bowker, the company that assigns ISBN numbers to publishers, made himself the sole contact person for MLP and removed M. Nora from its authorized contact list. Again, Nora did not inform MLP of these actions.

Claiming to represent MLP, Nora attempted to market his work through on-line retailer Amazon.com. Amazon.com initially rejected Nora's application because the three-digit ISBN number he had chosen was invalid. Nora again contacted R.R. Bowker and obtained a duplicate log book of three-digit ISBN suffixes. He assigned the book a new three-digit ISBN suffix and reapplied to Amazon.com. He also listed the book with Books in Print, a national

[5] A seven-digit ISBN is assigned to each publisher, together with a series of three-digit suffixes. The seven-digit number identifies the publisher and the publisher assigns a three-digit suffix to each book it publishes. The resulting ten-digit ISBN becomes the book's primary identifier for inventory, marketing and distribution purposes.

bibliographical compendium, identifying it as a publication of MLP under the imprint Skald Books.[6]

MLP now claims that it lost business and expected return on its marketing investment and that its reputation was harmed as a result of Nora's acts. It alleges that because Nora changed the contact information, retailers and customers were unable to place orders with MLP, that it lost a number of orders and that its legitimate titles were suddenly listed in national catalogs and on-line outlets as unavailable, out of print or as Skald Book publications.

**III. MLP's Response**

Upon learning of Nora's activities, M. Nora informed him that if he did not resign his positions as director and president the board would meet to discuss removing him. Nora refused to resign. A board meeting was scheduled for November 2001 and notices were sent to all directors. Nora did not attend the board meeting, but responded to the meeting notice by letter. In the letter Nora stated, "I grant the use of the ISBN and trademark to the board of directors for so long as I remain on the board. If I am voted off the board, I believe I have a right to take the trademark and ISBN with me." The board met and unanimously voted to remove Nora as director and president of MLP.

---

[6] An "imprint" is a unique name and/or logo given to a specific line of books by the publisher.

## PROCEDURAL BACKGROUND

MLP filed its amended complaint on February 12, 2002, alleging false designation of origin under the Lanham Act, deceptive trade practices under the Minnesota Uniform Deceptive Trade Practices Act, breach of fiduciary duty by a director and officer and conversion. Defendant responded with counter-claims alleging false designation under the Lanham Act, conversion, deceptive trade practices, consumer fraud and declaratory relief. Both parties moved for preliminary injunctive relief. The court denied both motions, finding that neither party had demonstrated a greater likelihood of success on the merits or a threat of irreparable harm. MLP now moves for partial summary judgment, seeking judgment on all but its conversion claim. Defendant also moves for partial summary judgment, seeking dismissal of all of MLP's claims.

## DISCUSSION

At the center of the present controversy is the question of ownership of the trade name Mid-List Press and the ISBNs. MLP claims that both belong to it and that Nora misappropriated them for his own benefit. Nora contends that both belong to him because he never relinquished them to JLH or MLP. He claims he merely allowed JLH and MLP to use them. Nora also claims that his actions were within his authority as president of MLP and were not a breach of his fiduciary duties to the corporation.

**I. Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)(quoting Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential

element necessarily renders all other facts immaterial. See id. at 322-23.

Summary judgment is appropriate in trademark and unfair competition cases if the dispute centers on the interpretation of the facts rather than the facts themselves. See Duluth News-Tribune v. Mesabi Publishing Co., 84 F.3d 1093, 1099 (8th Cir. 1996) (citing Woodsmith Publishing Co. v. Meredith Corp., 904 F.2d 1244, 1247 (8th Cir. 1990)).

**II. MLP's Motion for Partial Summary Judgment**

**A. False Designation of Origin**

MLP alleges that by publishing his book under the trade name Mid-List Press and by using its ISBN, Nora falsely represented that his book originated from MLP, in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). The Act prohibits the use of false or misleading words, names or symbols regarding the origin of goods or services in commerce. See id. The initial inquiry is whether a MLP has an interest in the trade name protected by the Act.[7] See e.g., Cellular Sales, Inc. v. McKay, 942 F.2d 483, 485-86 (8th Cir. 1991) (identifying protectable interests in trade names). Nora contends that the trade name and ISBNs were assigned to him personally, remained his property and his use of them cannot be false or misleading.

[7] Because the relevant underlying facts are not in dispute, the question of ownership of the trade name and ISBNs can be determined as a matter of law. See Celotex, 477 U.S. at 322.

The court disagrees with Nora's argument because "[t]here is no such thing as a property in a trade-mark except as a right appurtenant to an established business or trade in connection with which the mark is employed."[8] United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 96 (1918). Nora's argument that there are no formal documents evidencing a transfer of the assets of the proprietorship to the corporation fails, because no formal assignment is required to effect the transfer of a trade name from an entity to its successor. See Woodward v. White Satin Mills Corp., 42 F.2d 987, 989 (8th Cir. 1930). The transfer of a trade name to a subsequent entity that carries on the previous enterprise is presumed in the absence of evidence to the contrary. See Jarvaise Academy of Beauty Culture v. St. Paul Institute of Cosmetology, 237 N.W. 183, 185 (Minn. 1931); Dovenmuehle v. Gilldorn Mortgage Midwest Corp., 670 F. Supp. 795, 798 (N.D. Ill. 1987).

The trade name and ISBNs are not Nora's personal property because they exist only insofar as they are associated with the on-going publishing business. See United Drug Co., 248 U.S. at 96. The trade name and ISBNs were used solely in conjunction with the publication of books, first by the sole proprietorship, then by JLH

---

[8] Trade names are not trademarks in the strict sense but their use and transfer are governed by the same legal principles. See Jarvaise Academy of Beauty Culture v. St. Paul Institute of Cosmetology, 237 N.W. 183, 185 (Minn. 1931).

and for the last nine years by MLP. While Nora may have meant to retain control of the trade name and ISBNs, he also intended that JLH and MLP would each carry on the work of its predecessor.[9] Nora has provided no evidence to rebut the presumption that the trade name and ISBNs transferred to each of the subsequent enterprises.[10] The record indicates the contrary. Each subsequent iteration of the organization used the trade name Mid-List Press and each registered publications using the original set of ISBNs. Therefore, the court finds that the trade name and ISBNs belong to the corporation and are not Nora's personal property.

The remaining question is whether or not Nora's actions violated the Lanham Act. "The key to finding a violation under section 43(a) is a determination that the materials used by the defendant created a likelihood of confusion, deception or mistake

---

[9] Moreover, Nora's claim that he did not intend to transfer his interest in the trade name is irrelevant. To retain control of the trade name, "the requisite intent is an intent to resume a commercial level of use, not just an intent to resume a token level of use to try to avoid loss of rights." J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 17.11 (4th ed. 2003). There is no evidence that Nora intended to resume commercial publication under the MLP trade name apart from JLH. Instead, he expected the subsequent corporations to do so. That expectation only changed when MLP refused to publish Nora's manuscript.

[10] Nora's argument that the dissolution filed with the state of Colorado showed that the remaining property of the Colorado corporation was returned to its shareholders fails because the trade name and ISBNs are not property separate from the established business with which they are associated. See United Drug Co., 248 U.S. at 96.

on the part of the consuming public." Metric & Multistandard Components Corp. v. Metric's, Inc., 635 F.2d 710, 714 (8th Cir. 1980). To prevail, MLP must show that Nora's use of its trade name and ISBNs falsely designate the origin of a product and that purchasers are likely to be confused or deceived by that designation. See WSM, Inc. v. Hilton, 724 F.2d 1320, 1331 (8th Cir. 1984).

Nora deceived the Library of Congress, R.R. Bowker, Books in Print, Amazon.com and the book purchasing public by his actions.[11] Nora denies intending to deceive, asserting that it was "his right as president and publisher" to unilaterally take whatever steps necessary to publish his manuscript. (Def's Mem. in Opp'n to Pl's Mot. for Partial Summ. J. at 17.) However, intent is not an element of a false origin claim. See 15 U.S.C. § 1125(a). Nora further asserts that he had no duty to report his actions to subordinate and "junior officers." (See Def.'s Mem. in Opp'n to Pl.'s Mot. for Summ. J. at 21.) While that may be true, he did

[11] Nora admits he unilaterally chose to bypass MLP's established application process and use the trade name and ISBNs for his own purposes. He did so because he believed that the Library of Congress would only accept books of poetry that had been published by an established publisher. He further believed that without a LCCN from the Library of Congress, his book would not be carried in other libraries. Nora admits he represented himself as Stiles when he contacted the Library of Congress, that he changed the contact information at R.R. Bowker and obtained duplicate ISBNs and that he represented his work as a MLP publication to Amazon.com, all without informing anyone at MLP. (See Def.'s Mem. in Opp'n to Pl.'s Mot. for Summ. J. at 6, 7, 17-19.)

have a duty of loyalty and honesty to the corporation and was subject to the authority of the board of directors. The court finds that by using the trade name and ISBNs Nora falsely designated his work as an MLP publication. The court further finds that consumers would be deceived or confused about the work's origin. Therefore, summary judgment of false designation of origin is appropriate.

**B. Deceptive Trade Practices**

MLP alleges that Nora's actions violated the Minnesota Uniform Deceptive Trade Practices Act ("UDTPA"), Minn. Stat. §§ 325D.43-48. The UDTPA closely mirrors the Lanham Act and claims under the Acts are coextensive. See DaimlerChrysler AG v. Bloom, 315 F.3d 932, 935 (8th Cir. 2003). The UDTPA allows persons "likely to be damaged by a deceptive trade practice of another" to obtain an injunction against such practices. Minn. Stat. § 325D.45 Subd. 1. The Act also allows an award of costs and attorney's fees to the prevailing party, in the court's discretion. See Minn. Stat. § 325D.45 Subd. 2. Deceptive trade practices include passing off goods as those of another and causing likelihood of confusion regarding the source or approval of goods, or an affiliation, connection or certification of goods. See Minn. Stat. § 325D.44 Subd. 1(1)-(3). The Act allows injunctive relief even when damages are otherwise available,

but does not itself provide a basis for private actions for damages. See Simmons v. Modern Aero, Inc., 603 N.W.2d 336, 339 (Minn. Ct. App. 1999).

Because Nora misappropriated MLP's trade name and ISBN and claimed that his book was affiliated with and approved by MLP, a summary finding that he has violated the UDTPA is appropriate.

**C. Breach of Fiduciary Duty by a Director or Officer**

MLP next alleges that Nora's actions breached his fiduciary duty to the corporation. Corporate directors and officers stand in a fiduciary relationship to the corporation. See Minn. Stat. § 317A.361; Pepper v. Litton, 308 U.S. 295, 306 (1939); Westgor v. Grimm, 318 N.W.2d 56, 58 (Minn. 1982); Miller v. Miller, 222 N.W.2d 71, 79 (Minn. 1974). That duty requires officers "to act in good faith, with honesty in fact, with loyalty, in the best interests of the corporation." Shepard of the Valley Lutheran Church of Hastings v. Hope Lutheran Church of Hastings, 626 N.W.2d 436, 442 (Minn. Ct. App. 2001). To prove a breach of fiduciary duty, a plaintiff must demonstrate that the actions complained of are so contrary to the interests of the corporation that they could not have been caused by an honest intent to serve the corporation's interest. See id., (citing Westgor, 318 N.W.2d at 58).

Nora's interest was in publishing his manuscript. He does not claim that doing so was in the corporation's best interest, but rather that is was his right as founder of the enterprise and

president of the corporation.[12] The court finds that Nora breached the duty of honesty in fact by not informing MLP of his unilateral actions and the duty of loyalty by misappropriating the corporate trade name and ISBNs for his personal benefit. Summary judgment in favor of MLP is granted as to the breach of fiduciary duty claim.

**D. Remedies**

Both the Lanham Act and the UDTPA allow permit plaintiffs to seek injunctive relief.[13] See Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc., 633 F.2d 746 (8th Cir. 1980) (injunction permitted under Lanham Act); Minn. Stat. § 325D.45 Subd. 1 (injunction authorized under UDTPA). The court finds an injunction is appropriate in this case.

As set forth in greater detail in the conclusion of this order, Nora is ordered to immediately discontinue any and all use

---

[12] Remarkably, Nora suggests that not publishing the manuscript under the MLP trade name might have constituted misappropriation of a corporate opportunity. That claim is without merit, because Nora refused to submit the manuscript for consideration in the manner required of other first-time authors of poetry.

[13] MLP asserts that the court may also enjoin Nora following a finding that he breached his fiduciary responsibilities to the corporation. (See Pl.'s Mem. in Supp. of Mot. for Partial Summ. J. at 25.) While the court has broad discretion to fashion appropriate equitable remedies, the general rule is that equitable relief is available only when other remedies are inadequate or when authorized by statute. Compare Miller Waste Mills, Inc. v. Mackay, 520 N.W.2d 490, 496 (Minn. Ct. App. 1994) with Stocke v. Berryman, 632 N.W.2d 242, 245-46 (Minn. Ct. App. 2001). Because injunctive relief is appropriate under MLP's false designation of origin and deceptive trade practices claims, the court need not decide whether an injunction is permissible under the breach of fiduciary duty claim.

of MLP's seven-digit ISBN and three-digit suffixes, to return the duplicate ISBN log book to MLP and to make no further representations to any person or entity that he represents or is presently affiliated with MLP or JHL in any capacity.[14]

MLP contends that damages, costs and attorney's fees are also permissible remedies for its claims. (See Pl.'s Mem. in Supp. of Mot. for Summ. J. at 25-6.) MLP's complaint prays for damages "in an amount to be determined at trial." (See Verified Am. Compl. at 11.) However, the questions of whether or not these remedies are available or appropriate are not properly before the court.[15]

**III. Nora's Motion for Partial Summary Judgment**

Nora moves for summary judgment dismissing all of plaintiff's claims. Because the court has granted MLP's motion for summary judgment on its claims of false designation of origin, deceptive trade practices and breach of fiduciary duty, Nora's motion for summary judgment is denied as to those claims. Nora's memorandum of law supporting his motion for summary judgment does not address MLP's conversion claim. However, the factual record is sufficient for the court to address that issue.

---

[14] Nora complains that his ouster from the board and as president of MLP was contrary to the corporation's articles of incorporation. The court finds no merit in that argument.

[15] If money damages or fees and costs are available under any of its claims, MLP bears the burden of proving its losses. See Pemberton v. OvaTech, 669 F.2d 533,541 (8th Cir. 1982); Carpenter v. Nelson, 101 N.W.2d 918, 921 (Minn. 1960).

The common law tort of conversion is defined in Minnesota as "an act of willful interference with personal property, 'done without lawful justification by which any person entitled thereto is deprived of use and possession.'" DLH, Inc. v. Russ, 566 N.W.2d 60, 71 (Minn. 1997) (quoting Larson v. Archer-Daniels Midland Co., 32 N.W.2d 649, 650 (Minn. 1948)). A conversion claim is an action at law. See id. To succeed on a conversion claim, a plaintiff must prove that he holds a valid interest in the property and that the defendant deprived him of that interest. See Williamson v. Prasciunas, 661 N.W.2d 645, 649 (Minn. Ct. App. 2003).

Minnesota courts have not defined the outer boundaries of "personal property" in the context of conversion, but the Eighth Circuit Court of Appeals has considered that question. See H.J., Inc. v. IT&T Corp., 867 F.2d 1531, 1547 (8th Cir. 1989). There, the court found that Minnesota courts would likely follow the traditional rule that conversion applies only "to tangible personal property, or intangible property customarily merged in, or identified with, some document." Id. The court found that the plaintiff's good relations with its network of dealers, which was not substantiated by documentary evidence, constituted an intangible interest that could not be remedied through an action in conversion. See id. But here MLP's interest in its trade name and ISBNs can be merged into documented forms. Although it appears MLP has not registered the trade name, it could do so. Moreover,

the ISBN is registered to MLP through R.R. Bowker. The court finds a sufficient "property interest" to support a claim of conversion.

However, Nora is entitled to summary judgment because his misuse of the trade name and ISBN was not of sufficient scope to support MLP's conversion claim. "The tort of conversion applies where interference with the plaintiff's property is so serious as to justify the forced judicial sale of the property to the defendant." Bloom v. Hennepin County, 783 F. Supp. 418, 441 (D. Minn. 1992). Like the plaintiff in Bloom, MLP still has possession and use of its trade name and ISBNs. MLP does not wish to force Nora to purchase the trade name and any harm arising from its misappropriation and the loss of one three-digit ISBN suffix may be remediable in damages under MLP's other claims. Therefore, an action in conversion is not appropriate and Nora's motion for summary judgment is granted as to that claim.

## CONCLUSION

Having found no issues of material fact in dispute and that Defendant James Nora, Sr. violated the Lanham Act, breached his fiduciary duty to MLP and violated the Minnesota Uniform Deceptive Trade Practices Act, **IT IS HEREBY ORDERED** that:

1. The motion of plaintiff Mid-List Press for partial summary judgment [Docket No. 41] is granted.

2. The motion of defendant James Nora, Sr. for summary judgment [Docket No. 46] is granted as to Count 3 and denied as to Counts 1, 2 and 4 of the verified amended complaint.

**IT IS FURTHER ORDERED** that:

1. Defendant James Nora, Sr. and all those acting in concert with him or under his direction are permanently enjoined from any further publication, sale, promotion, distribution or display of the work entitled Songs of a Brazen Bull that in any manner uses or refers to MLP's trade name "Mid-List Press" or any ISBN number associated with or registered to MLP or JHL.

2. Defendant James Nora, Sr. shall account for and recall from any printer, retailer, wholesaler or distributor all copies of the work entitled Songs of a Brazen Bull that in any manner bear, use or refer to MLP's trade name "Mid-List Press" or any ISBN number associated with or registered to MLP or JHL. All copies of the work Songs of a Brazen Bull bearing a mark or ISBN associated with MLP shall be destroyed or modified so as to no longer bear such mark or ISBN.

3. The court retains continuing jurisdiction over this injunction.

Dated: July 30, 2003

David S. Doty, Judge
United States District Court