02-68 DSD / Jmm

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 03-3229

| | | |
|---|---|---|
| Mid-List Press, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| James J. Nora, Sr., | * | |
| | * | |
| Appellant. | * | |

Submitted: May 14, 2004
Filed: July 9, 2004

Before WOLLMAN, HAMILTON,[1] and BYE, Circuit Judges.

BYE, Circuit Judge.

Dr. James J. Nora, Sr., appeals from an order the district court[2] entered pursuant to the Lanham Act, 15 U.S.C. §§ 1051-1128, enjoining him from using the Mid-List Press (MLP) trade name to market his book of poetry, *Songs from a Brazen Bull*. We affirm.

[1]The Honorable Clyde H. Hamilton, United States Circuit Judge for the Fourth Circuit, sitting by designation.

[2]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

SCANNED
U.S. DISTRICT COURT MPLS

I

We summarize the background of this case and refer the reader to the district court's published decision for a more detailed account. See Mid-List Press v. Nora, 275 F. Supp. 2d 997, 998-1000 (D. Minn. 2003).

MLP is a modest-sized Minneapolis-based publisher of fiction, poetry, and creative nonfiction. MLP had its origins in 1988 when Dr. Nora, a cardiologist and academician by profession, started a publishing company out of his home in Denver, Colorado, for the purpose of publishing a few books, including his own. The Colorado company, incorporated in 1990 under the name Jackson, Hart & Leslie, Inc. (the middle names of Nora's three children), eventually dissolved and the assets were transferred to a Minnesota company of the same name incorporated as a nonprofit corporation in 1993. The original Colorado enterprise registered Mid-List Press as its trade name; the Minnesota corporation continues to use the same trade name (we refer throughout to the entity's trade name rather than its corporate moniker).

After MLP obtained nonprofit status, Dr. Nora continued as a director and corporate president, but lived in Colorado and did not actively manage the company. Dr. Nora's daughter, Marianne, who lives in Minneapolis, has been involved in the company since its inception. She and her husband, Lane Stiles, both of whom were corporate officers and members of the board of directors, managed the day-to-day operations after MLP incorporated in Minnesota.

In 2001, Dr. Nora submitted a book of his poetry, *Songs from a Brazen Bull*, to MLP for publication. Specifically, Dr. Nora wanted MLP to affix its seven-digit International Standard Book Number (ISBN) publisher prefix to the book (which when combined with a three-digit suffix unique to each book becomes the book's ten-digit ISBN for inventory, marketing, and distribution purposes), obtain a Library of Congress Catalog Number (LCCN) for the book, and have the book printed for

publication. MLP advised Dr. Nora, however, it would not publish the poetry unless Dr. Nora submitted the book and it was accepted for publication through MLP's First Series Award for Poetry program.[3] MLP told Dr. Nora the assets of a nonprofit organization could not be used for the personal benefit of its officers and directors, and therefore MLP could not favor him over other unpublished poet applicants.

Believing he had the power to do so as the corporate president, Dr. Nora circumvented MLP's procedure for publishing his book. He used MLP's seven-digit ISBN publisher prefix to obtain an LCCN from the Library of Congress, had his book printed, and attempted to market it through Amazon.com as an MLP product. After Amazon.com initially rejected the book because Dr. Nora had used an invalid three-digit ISBN suffix, Dr. Nora contacted R.R. Bowker, the company that assigns ISBN numbers to publishers. He obtained a valid suffix, successfully reapplied to Amazon.com, and began marketing *Songs from a Brazen Bull* as an MLP product. Dr. Nora did all this without the approval of any other officer or director of MLP.

After discovering Dr. Nora's activities, MLP's board of directors met and removed him as a director and the president of MLP. MLP also initiated this lawsuit, alleging Dr. Nora falsely designated the origin of his book in violation of the Lanham Act; engaged in deceptive trade practices in violation of the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §§ 325D.43-.48; breached the fiduciary duties he owed to MLP; and committed the tort of conversion.

After the parties filed cross-motions for partial summary judgment, the district court granted MLP's motion on all issues save the conversion claim. The district court held Dr. Nora falsely designated the origin of his book by using MLP's trade name and ISBN, and permanently enjoined Dr. Nora from any further publication,

---

[3]The First Series program published the works of first-time poets. Dr. Nora, although a published author, was not a published poet.

sale, or promotion of *Songs from a Brazen Bull* under the MLP trade name. This timely appeal of the injunction followed.

II

We review the issuance of a permanent injunction for abuse of discretion. Randolph v. Rodgers, 170 F.3d 850, 856 (8th Cir. 1999).

Dr. Nora essentially raises three issues on appeal. First, Dr. Nora contends he could not have violated the Lanham Act when he used MLP's trade name to market his book because he had authority to act on behalf of MLP as its president and was in fact acting on MLP's behalf when he published his book of poetry. Therefore, he argues, the book actually is an MLP product and there can be no claim for false designation of origin under the Lanham Act. We disagree.

The mere fact Dr. Nora was MLP's president is insufficient to show his actions were MLP's actions. In cases of self-dealing between a corporate officer and his corporation, the law presumes the officer acts on his own behalf and not the company's. See, e.g., Snyder Elec. Co. v. Fleming, 305 N.W.2d 863, 867 (Minn. 1981) ("[I]n all cases of claimed self-dealing or conflict of interest against corporate officers and directors, such transactions are presumptively fraudulent and to overcome this presumption the executive must show by clear proof he acted with impartiality and fairness to the corporation."). Even when the record is viewed in the light most favorable to Dr. Nora, we conclude the presumption stands; Dr. Nora has not shown he acted on MLP's behalf when he published his book of poetry. Indeed, as MLP argues on appeal, we can see how publication of the corporate president's own book without following normal procedures could seriously tarnish MLP's reputation as a nonprofit publisher, and thus run counter to the corporation's interests.

Second, Dr. Nora claims the MLP trade name and its ISBN number were his personal property. He argues MLP was merely using the trade name with his permission. Again, we disagree. The district court correctly determined Dr. Nora did not have a personal interest in the trade name and ISBN because "they exist only insofar as they are associated with the ongoing publishing business." Mid-List Press v. Nora, 275 F. Supp. 2d at 1002 (citing United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 97 (1918) ("There is no such thing as property in a trade-mark except as a right appurtenant to an established business or trade in connection with which the mark is employed.")).

Finally, Dr. Nora argues the district court abused its discretion in granting a permanent injunction because MLP failed to present evidence of actual consumer confusion. Dr. Nora claims actual consumer confusion is a necessary element of a false-designation-of-origin claim. The applicable provision of the Lanham Act, however, prohibits a person from using "any false designation of origin . . . which . . . is *likely* to cause confusion." 15 U.S.C. § 1125(a)(1) & (a)(1)(A) (emphasis added). Proof of *likelihood* of confusion is all that is required to obtain injunctive relief. See Woodsmith Publ'g. Co. v. Meredith Corp., 904 F.2d 1244, 1247 n.5 (8th Cir. 1990).

MLP proved likelihood of confusion given the circumstances present in this case. Typical Lanham Act claims involve situations where the alleged wrongdoer uses a mark or name so similar to the plaintiff's the public is likely to be deceived. This case involves a situation where the wrongdoer used the plaintiff's actual mark, not merely a similar mark, to pass off his product as the plaintiff's. In an analogous case – where the wrongdoer passed off the plaintiff's work as his own – one of our sister circuits was "hard-pressed to imagine what effect these actions could possibly have other than to convince anyone who looked at the plans that they were [defendant's] work. Few are the cases demonstrating a more obvious and imminent likelihood of confusion." Johnson v. Johnson, 149 F.3d 494, 503 (6th Cir. 1998). We

believe the observation is equally apt here. It is difficult to imagine how the public would not be confused about the origin of *Songs from a Brazen Bull*, when the book actually bore the MLP trade name and ISBN number.

III

For the reasons stated, we find no abuse of discretion and affirm the district court's permanent injunction in all respects.

______________________________

A TRUE COPY OF THE ORIGINAL
MICHAEL E. GANS, CLERK
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
BY: Michael E. Gans